Argued and submitted October 25, 1993, affirmed October 12, 1994, petition for review allowed February 7, 1995 (320 Or 567)
See later issue Oregon Reports

# WINDSOR INSURANCE COMPANY,
### a Georgia corporation,
*Respondent,*

*v.*

## Michael and Donna JUDD,
### individually,
### and as co-personal representatives of
### the Estate of Gordon O. Judd,
*Appellants.*

### (92-7-183; CA A78403)

882 P2d 1135

Thomas J. Rastetter argued the cause and filed the briefs for appellants.

Michael C. Mitchell argued the cause for respondent. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Defendants appeal a summary judgment in favor of plaintiff Windsor Insurance Company, which declared that plaintiff is not obligated to provide defendants underinsurance coverage. We affirm.

The facts are undisputed. Defendants' son, Gordon Judd, was killed in a two-car collision while riding in a vehicle driven by Jeffrey Manning. Manning was insured under a Safeco single limit automobile insurance policy that provided liability coverage in the amount of $60,000. As a result of the accident, multiple claims were made against Manning's insurance. Judd was insured under his parents' policy with plaintiff, which provided uninsured motorist protection of $50,000 per person and $100,000 per accident. That protection is greater than the minimum uninsured motorist coverage required by law. ORS 806.070. The policy language concerning uninsured motorist coverage is as follows:

"We will pay damages, except punitive or exemplary damages, which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:

"1.   Bodily injury sustained by an insured and caused by an accident * * *."

The policy defines "uninsured motor vehicle" as

"a land motor vehicle or trailer of any type which is:

"(a)   not insured by a liability bond or policy at the time of the accident;

"(b)   insured by a liability bond or policy at the time of the accident but its limit for liability is less than the limit of liability for this coverage. Our obligation is for the difference between the limit of our coverage and the limit of the lesser liability coverage paid to the insured."

The policy then defines the limits of "bodily injury" liability:

"1.   The limit of bodily injury liability for Uninsured Motorists Coverage stated in the declarations as applicable to each person is the limit of *our* liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as a result of one accident.

"2.   Subject to the limit for each person the bodily injury liability for each accident is the maximum *we* will pay for all

damages, including those for care or loss of services, due to bodily injury sustained by two or more persons in any one accident." (Emphasis in original.)

Defendants claimed underinsured motorist coverage under the policy. Plaintiff denied coverage and initiated this action, requesting a declaration that it is not obligated to provide underinsured motorist coverage to defendants. The parties filed cross-motions for summary judgment. According to plaintiff, because defendants had obtained uninsured motorist coverage greater than the minimum required by law, it is only obligated to provide underinsurance coverage for damages from the use of a motor vehicle that is insured for less than defendants' uninsured motorist coverage. ORS 742.502(3). In other words, plaintiff argued, it must provide defendants underinsured motorist coverage only if Manning's coverage is less than theirs. Because Manning's $60,000 in liability coverage is greater than the $50,000 *per person* coverage that defendants purchased, plaintiff concluded, defendants are not entitled to underinsurance coverage. Defendants agreed that plaintiff's obligation to provide underinsurance coverage is triggered if Manning's coverage is less than defendants' uninsured motorist coverage. They contended that Manning's coverage was, in fact, less than defendants', because defendants' coverage of $100,000 *per accident* provides the proper basis for the comparison.

The trial court granted plaintiff's motion, denied defendants' and entered judgment in plaintiff's favor. On appeal, defendants assign error to the trial court's order denying their motion for summary judgment and granting plaintiff's motion instead.

Defendants offer two arguments in support of their assignment of error. First, they argue that, in a multiple-injury accident, it is the per accident coverage that must be compared with the tortfeasor's coverage for the purpose of determining underinsurance coverage. They insist that any other construction of the policy would render meaningless the per accident coverage. In support of their argument, defendants rely on *Allstate Ins. Co. v. Hager*, 573 NYS2d 134 (1991), 605 NYS2d 310 (1993), *leave to appeal denied* 83 NY2d 757 (1994). Second, they argue that, at the very least, the policy language concerning uninsured motorist coverage

is ambiguous and, therefore, must be construed against plaintiff, the insurer. Plaintiff argues that the plain language of the policy requires the application of defendants' *per person* coverage in determining uninsured motorist coverage, and therefore the trial court did not err in granting its motion for summary judgment and in denying defendants' motion. We agree with plaintiff.

■■ Summary judgment is appropriate when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Gaston v. Parsons*, 318 Or 247, 251, 864 P2d 1319 (1994). Resolution of the parties' dispute turns on a question of law, the interpretation of plaintiff's insurance policy. In interpreting an insurance policy, our primary goal is to ascertain the intention of the parties, based on the terms and conditions expressed in the language of the policy. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). We first determine whether the language is ambiguous. Only if it is ambiguous, in the sense that there are at least two interpretations that are reasonable, "after all other methods for resolving the dispute over the meaning of particular words fail," do we resort to the rule of construction that the policy is to be construed against the insurer. 313 Or at 470-71.

■ In this case, the policy plainly provides that plaintiff is obligated to pay uninsured motorist coverage benefits for "[b]odily injury sustained by an insured and caused by an accident." No one contests that.

The policy further provides that the limit of "bodily injury" liability for each person

"is the limit of *our* liability * * * due to bodily injury sustained by one person as a result of one accident." (Emphasis in original.)

The limit of plaintiff's liability for "bodily injury sustained by one person" is $50,000.

Defendants agree that, if Judd were the only person injured in the automobile accident, the foregoing language would apply and defendants would be entitled to no underinsured motorist coverage benefits. They insist, however, that, because there were multiple parties injured in the accident and multiple claims asserted against Manning, the per person

limits do not apply. The argument ignores the fact that the per accident limit applies to claims against defendants' policy, not Manning's. The fact that there were multiple parties injured and multiple claims asserted against Manning is irrelevant. There remains but one claim against defendants' policy for "bodily injury sustained by one person as a result of one accident." Under the unambiguous terms of the policy, the $50,000 per person—not the $100,000 per accident—limits apply.

We acknowledge that the New York decision on which defendants rely is to the contrary. In it, the court merely stated that, because there had been multiple claims made against a tortfeasor, it was appropriate to apply the per accident limits of the insured's policy in determining whether the insured was entitled to underinsured motorist coverage. For the reasons we have articulated, we find that reasoning unpersuasive.

Because we conclude that the unambiguous language of the policy requires application of the per person limits, we need not reach defendants' alternative argument that the ambiguity of the policy requires that it be construed against plaintiff.

Affirmed.